## TYLER v. ODEN et ux.

No. 29790.    April 29, 1941.

Rehearing Denied June 24, 1941.

*114 P. 2d 447.*

I. L. Harris and Ted R. Elliott, both of Oklahoma City, for plaintiff in error.

Owen F. Renegar, of Oklahoma City, for defendants in error.

CORN, V. C. J. This appeal involves the custody of the minor child of William G. Tyler, the plaintiff in error, against the maternal grandparents, M. E. and Minta V. Oden, defendants in error.

On November 19, 1937, Estah V. Tyler filed her petition in the district court of Oklahoma county, against her husband, William G. Tyler, for divorce, and for custody of their minor child, Lee Ann Tyler, then three years of age. Service of summons was waived, and on December 3, 1937, a default decree was rendered against said William G. Tyler for divorce, custody of Lee Ann, and for $25 per month support money for said infant.

Estah V. Tyler passed away August 15, 1939, and on August 23, 1939, Tyler filed an application for an order for the custody of said child. The court granted said order, ex parte, but before the same was executed by the sheriff, vacated said order, and set Tyler's application for trial. The maternal grandparents of said child intervened by petition, and on September 8 and 9, 1939, the issues thus formed were tried, wherein the application of the father was denied and the custody of said child was given to her grandparents.

The record reflects William G. Tyler and Estah Tyler were married October 15, 1932, and of said marriage one child, Lee Ann, was born. About one year prior to granting of divorce, on account of extreme cruelty and failure on the part of the husband to provide for the support of his wife and child, the wife was compelled to take her baby and go to the home of her parents. She obtained employment and, with the assistance of her father, provided for herself and child until the divorce was granted, the husband failing to provide for either of them during this period of time.

After the divorce was granted, it was necessary, on two occasions, to call upon the husband and compel him to make the payments of child support as decreed by the court. Although he lived near the place where his child was staying, he failed to visit her for a period of from 60 to 80 days. There was testimony regarding the moral character of the father, evidence disclosing that he and a

woman on one occasion pleaded guilty of having used a room for immoral purposes.

The trial court held that it was for the best interest of the child that it be left with its grandparents. In this case it is not a question of taking the child away from her father; that was done some three years before, when, by his own fault, the custody was given to the mother, and during the last three years the child had been kept by the grandparents.

It is impossible for this court to lay down a hard and fast rule of law by which to decide each and every case of this nature, but it must always base its decision upon the facts and circumstances surrounding each particular case.

It would serve no useful purpose for us to engage in a discussion of additional facts as disclosed by the record. We hold, from all the facts and circumstances, that the father is shown to be an improper person with whom to place the care, custody, and training of his infant child as against the maternal grandparents, who are shown by this record to be fit and proper persons to rear and train said child.

Judgment affirmed.

RILEY, BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. OSBORN, J., concurs in conclusion. WELCH, C. J., dissents.

---

WELCH, C. J. (dissenting). I am unwilling to join my associates in pronouncing this father an unfit person to have the custody of his child, in view of the strong showing in the record as to his present good citizenship, and dependability, and wholesome home surroundings. This showing is made by impressive testimony of witnesses who appear wholly worthy of belief. The trial judge, who saw and heard the witnesses, did not make any such finding of unfitness, although the matter was called to his attention by direct inquiry and request in open court at the close of all of the evidence.

While the judgment entered makes no direct reference to the fitness or unfitness of anyone, it, by implication, finds the grandparents and the father as well to be fit persons. The judgment definitely implies a conclusion that the father possesses no unfitness, for while the court gave the chief custody to the grandparents, he gave custody to the father for a substantial percentage of the time. I fear it is unjust to the father, and perhaps unjust to the child as well, to make this pronouncement against the father, which from the trial record and judgment appears to me to be unwarranted.

It seems to me to be a wholesome rule applicable to all the courts, and to all cases, that the court ought not to find that parents or one surviving parent is an unfit person to have custody of his or her child unless the evidence furnishes most compelling reason for such a conclusion. If the record here furnishes such compelling reason, then it might be said to be inconsistent to approve the trial court judgment placing this child with her father part of the time. However, I pass over any suggestion of mere inconsistency. This for the reason that a mere judicial inconsistency as such, or the mere question whether there is or is not some inconsistency, is not very important in dealing with the matter of rearing a child, which is quite important.

When the custody of a young child is divided between two homes, it is a matter of practical experience, and the history of such cases, that from time to time in the future, occasions arise making it necessary or proper to make changes in the amount of the time of the one custody or the other. Conditions might arise which would strongly urge placing this child in the custody of her father perhaps for some entire school term, or for some other temporary or specific period for some particular purpose. It has been so in similar cases before. Or the child in time might be deprived of one or both of her grandparents, in which event some other custody arrangement for the child

would be imperative. I take it the trial court would be somewhat bound by the final determination of this court that the father is an unfit person to have custody of this child. At least I suppose the trial court would be bound by the conclusion that the adjudicated unfitness of the father would prevent any enlargement whatever of the custody given to the father by the trial court judgment dividing custody. That is to say, that while the father is, generally speaking, an unfit person to have custody of his child, he is a fit person to have her for the purpose of the trial court's division of custody order. But for the trial court in the future to give much weight to this court's adjudication of paternal unfitness, the trial court might feel that he is forbidden to extend the custody given the father. And that might be logical, for if the father is an unfit person, then the custody of this child ought to be given to grandparents, or if for any reason they could no longer serve as such custodians, then to some other relative or agency.

These reasons in part form the basis for my conclusion that this court is not warranted, and may do grave injustice, in adjudicating this father an unfit person to have custody of his child.